IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DANIEL L. GROSS,**

       **Plaintiff,**                                            Civil Action No. 3:21cv805

     **v.**                                                   **JURY TRIAL DEMANDED**

**JAMES R. DUDLEY, M.D.,**
**in his individual capacity,**

       **SERVE:**    **James R. Dudley, M.D.**
                       **Riverside Medical Group**
                       **618 Hospital Road**
                       **Tappahannock, VA 22560**

       **Defendant.**

## COMPLAINT

COMES NOW the plaintiff, Daniel L. Gross ("Plaintiff," "Gross"), by counsel, and alleges as follows against the defendant, James Dudley, M.D. ("Dudley" or "Defendant").

### Parties

1. Plaintiff is an individual and resident of Richmond County, Virginia. During the events alleged herein he was a prisoner in the Northern Neck Regional Jail ("NNRJ").

2. Dudley is a natural citizen, resident of Virginia, and medical doctor responsible for treating prisoners at the Northern Neck Regional Jail at all times pertinent hereto, whose duty was to provide reasonable and necessary medical care for inmates at NNRJ, including Plaintiff, and is being sued in his individual capacity.

### Jurisdiction

3. This action arises under the provisions of the Fourteenth and Eighth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

4. This Court has jurisdiction over this cause under the provisions of 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)–(4). This action arises out of the conduct of Defendant in Warsaw, Virginia, where Defendant was acting under color of state law.

5. Venue over Plaintiff's claims is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to this claim occurred in this Judicial District.

## Facts

6. Plaintiff was committed to the custody of the superintendent of the Northern Neck Regional Jail in December of 2018, and remained incarcerated there until March of 2021. Because Plaintiff was a model inmate, he was granted "trustee" status during all times herein and incident thereto was provided living space in a section of the jail removed from general population and hence away from younger, more dangerous inmates.

7. Prior to his incarceration at NNRJ, Plaintiff had had a long history of kidney stones, for which he had long been treated with opioid medications for pain control:

   A. In March of 2011, while being seen for kidney stones, Plaintiff was prescribed Percocet.

   B. On May 29, 2016, while being seen for kidney stones, Plaintiff was given an injection of hydromorphone and prescribed Percocet.

   C. On June 5, 2016, while being seen for kidney stones, Plaintiff was prescribed Percocet and Dilaudid.

   D. On June 22 and 23, 2016, while being seen for kidney stones, Plaintiff was given hydromorphone and Percocet.

   E. On February 21, 2018, while being seen for kidney stones, Plaintiff was given an injection of morphine.

   F. On June 5, 2018, while being seen for kidney stones, Plaintiff was given an injection of morphine and was prescribed Percocet.

   G. On July 29, 2018, while being seen for kidney stones, Plaintiff was given injections of morphine and was prescribed Percocet.

      H. On August 9, 2018, while being treated for kidney stone pain, Plaintiff was prescribed Percocet and Dilaudid.

8. Among Plaintiff's symptoms of kidney stones were burning sensations while urinating, frequent urination, and severe, sharp pain comparable to razor blades passing through the urethra. By no later than March of 2019, Dr. Dudley had become aware of Plaintiff's long history of kidney stones and that Plaintiff sometimes had 14 or more kidney stones at a time, on both sides, causing frequent periods of sustained extreme pain.

9. On April 24, 2020, Plaintiff underwent the following procedures at Riverside Doctors' Hospital Williamsburg: cystoscopy with left ureteroscopy, holmium laser lithotripsy, ureteral stone basketing, left ureteral stent placement, and fluoroscopy interpretation.

10. The H&P (health and physical) notes from April 24, 2020, confirm that Plaintiff was suffering from "Bilateral (right greater than left) intrarenal nephrolithiasis," i.e., kidney stones on both sides.

11. These procedures on April 24, 2020, treated the kidney stones on Plaintiff's left side, but left the kidney stones on his right side unaffected. Dr. Dudley knew that Plaintiff would continue to have severe pain associated with kidney stones after the surgery on April 24, 2020, because the kidney stones on his right side were not treated.

12. Following the April 24, 2020 surgery, Plaintiff continued to experience, and notify Dr. Dudley of, chronic and acute serious pain on his right side, however, Dr. Dudley failed to respond to Plaintiff's frequent complaints of same with either opioids or any other pain medication having any potential of reducing Plaintiff's chronic serious pain. Dr. Dudley's conduct amounted to a *per se* rule that Plaintiff could not receive opioid pain medication, regardless of the frequency or severity of his chronic serious pain.

13. The non-opioid analgesic over-the-counter medications prescribed by Dr. Dudley were entirely ineffective; at all times, Plaintiff continued to suffer severe pain due to the presence of kidney stones and continued to notify Dr. Dudley that he was still in chronic serious pain until discharge to no avail.

14. After having endured untreated severe pain for almost a full year, in April 13, 2021, Plaintiff had a "telemed" urology consultation with Physician Assistant (PA) Gretchen Arnold ("Arnold") of Riverside Urology Specialists Williamsburg, attended by NNRJ Nurse Anne Ailor ("Ailor"), wherein Arnold informed Ailor that the over-the-counter non-opioid analgesic medications Defendant had been administering to Plaintiff were completely ineffective. In fact, those analgesics were as ineffective as would have been water poured across Plaintiff's abdomen and as such did not constitute the exercise of any professional judgment at all. At all times herein Dr. Dudley was aware that opioid medications were an available class of medications capable of eradicating Plaintiff's pain but refused to prescribe some, in deliberate indifference to Plaintiff's acute and chronic severe pain.

15. Dr. Dudley's deliberate indifference Plaintiff's medical condition was not rooted in any bona fide medical judgment, but instead in arbitrary and erroneous non-medical assumptions that Plaintiff was *per se* ineligible from opioid painkillers, as a consequence of pre-incarceration opioid abuse, and jailer security concerns that the administration of opioids to inmates necessarily constituted an unacceptable jail security risk. In fact, Plaintiff had never previously abused opioids and the properly controlled administration of opioid medications to jail inmates presents no jail security risk whatsoever.

16. In response to Plaintiff's multiple desperate pleas for treatment of his chronic and acute serious pain over many months, instead of providing Plaintiff with opioid or other

medically acceptable and efficacious pain medications, Dr. Dudley threatened Plaintiff that he would have him removed from trustee status, thereby requiring him to be relocated to jail housing with notoriously hostile and dangerous prisoners, if he did not desist in requesting meaningful treatment for his chronic and acute serious medical condition.

17. In consequence of Dr. Dudley's de facto ban on opioid pain medication as applied to Plaintiff, Plaintiff suffered bouts of extreme, unnecessary pain for over a year.

## COUNT I
### Denial of Federal Rights Under Color of State Law, 42 U.S.C. § 1983, in Violation of the Fourteenth and Eighth Amendments

18. Plaintiff incorporates into this Count all allegations stated elsewhere in this Complaint as though fully stated herein.

19. At all times relevant to the allegations in this Complaint, Defendant acted or failed to act under color of state law, so as to deny Plaintiff necessary medical care in contradiction of the Fourteenth and Eighth Amendments to the U.S. Constitution.

20. The Fourteenth and Eighth Amendments to the U.S. Constitution provide to prisoners in the custody of the state and its political subdivisions constitutionally protected rights to receive appropriate medical care, for serious medical conditions. Chronic serious pain is a serious medical condition.

21. Defendant deliberately disregarded Plaintiff's medical needs; deliberately withheld necessary medical care; and failed to provide necessary medical care.

22. Defendant engaged in this injurious conduct with deliberate indifference to Plaintiff's health and safety, thereby placing Plaintiff at substantial risk of serious harm.

23. At numerous points since March of 2019, Defendant was informed or aware that Plaintiff's serious medical needs were not being met and therefore had knowledge that Plaintiff's

constitutional rights were being violated.

24. Defendant's failure to provide adequate medical care in the form of pain management constituted a continuing violation of his rights under the Fourteenth and Eighth Amendments.

25. Defendant's failure to treat and threats to retaliate against Plaintiff for making reasonable requests for basic pain control medications constitute willful, wanton, reckless, and conscious disregard of Plaintiff's rights, and deliberate indifference to Plaintiff's serious medical needs.

26. Defendant's violation of the Fourteenth and Eighth Amendments to the U.S. Constitution establishes a cause of action, pursuant to 42 U.S.C. § 1983, for monetary relief consisting of compensatory damages and punitive damages, attorneys' fees and costs.

27. By unreasonably denying and delaying medical care, Defendant exhibited deliberate indifference to a serious medical need in violation of the prohibition against cruel and unusual punishment by the Eighth Amendment of the United States Constitution. Plaintiff's medical need was so serious as to be obvious to a lay person that he needed medical treatment and that any delay in treatment would result in unnecessary and wanton infliction of pain. Defendant knew of and disregarded excessive risk to Plaintiff and his delay in treatment caused a marked exacerbation of the chronic serious pain Plaintiff suffered.

28. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages, including physical injury, mental anguish, and pain and suffering.

29. Plaintiff has incurred and continues to incur attorneys' fees and other costs related to this action.

WHEREFORE, Plaintiff Daniel L. Gross, prays that this Court enter judgment in his favor against the defendant, James R. Dudley, M.D., in his individual capacity in an amount to be determined at trial for compensatory and punitive damages, together with pre-judgment and post-judgment interest from April 24, 2020, costs incurred and reasonable attorneys' fees, and any such other and further relief as the interests of justice may require.

**Plaintiff demands trial by jury.**

          Respectfully submitted,

          DANIEL L. GROSS


          By: ___/s/Jeremiah A. Denton III_
              Of Counsel

Jeremiah A. Denton III, Esq.
VSB #19191
Jeremiah A. Denton IV, Esq.
VSB #83818
Christopher W. Palermo-Re, Esq.
VSB #96255
DENTON & DENTON
3300 South Building, Suite 208
397 Little Neck Road
Virginia Beach, VA 23452-7356
Tel: 757/340-3232
Fax: 757/340-4505
jerry@jeremiahdenton.com
jake@jeremiahdenton.com
chris@jeremiahdenton.com
*Counsel for Plaintiff*