# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DANIEL L. GROSS,                              )
                                              )
      Plaintiff,                       )
                                              )
v.                                            )   Case No. 3:21-cv-805–HEH
                                              )
JAMES R. DUDLEY, M.D., in his                 )
individual and official capacities,           )
                                              )
      Defendant.                       )

### <u>MEMORANDUM OPINION</u>
**(Granting Defendant's Motion for Summary Judgment)**

This matter is before the Court on Defendant James R. Dudley's, M.D.

("Defendant") Motion for Summary Judgment (the "Motion," ECF No. 25), filed on

September 21, 2022.  On December 28, 2021, Plaintiff Daniel L. Gross ("Plaintiff") filed

an initial Complaint (ECF No. 1), followed by an Amended Complaint (ECF No. 23),

filed on September 12, 2022.  Pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of

his rights under the Fourteenth and Eighth Amendments to the Constitution of the United

States based on Defendant's decision to not prescribe opioids to treat Plaintiff's chronic

kidney stones and pain while incarcerated at the Northern Neck Regional Jail ("NNRJ").

(Am. Compl. at 1.)

In support of his Motion, Defendant argues that there was no policy preventing

him from prescribing opioid pain medication to Plaintiff, and he was free to make an

individualized treatment plan.  (Def.'s Mem. in Supp. at 1, ECF No. 26.)  He also argues

that he provided continuous and developing care to Plaintiff throughout treatment, and

that he was never deliberately indifferent to Plaintiff's medical needs. (*Id.*) As such, Defendant claims he is entitled to qualified immunity because no constitutional violation occurred, and there was no clearly established right for an inmate to receive the medication of his choice during Plaintiff's incarceration. Specifically, there was no clearly established right to opioid pain medication. (*Id.*)

The parties filed memoranda in support of their respective positions. The Court heard oral argument on November 7, 2022. For the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

Plaintiff was incarcerated at NNRJ from January 16, 2019, until March 8, 2021. (Mot. at 2.) Defendant is an independent contractor who serves as the jail physician at NNRJ and is also an emergency room physician at VCU Health Tappahannock Hospital, where he has served for the last thirty-three (33) years. (*Id.*) Plaintiff suffers from chronic kidney stone disease or "nephrolithiasis". (*Id.*)

Kidney stone pain can vary depending on the size of the kidney stone, and whether there is a partial or full obstruction of the ureter, which can lead to a blockage of urine draining from the kidney and dilation of the kidney and renal pelvis. (*Id.*) The dilation can cause pain and the pain will last until the stone passes through to the bladder or the obstruction is otherwise cleared. (*Id.*) Generally, the pain resolves quickly with the passage of the kidney stone. (*Id.*) Treatment options typically vary based on the size of the stones and the frequency of occurrence. (*Id.*) For recurrent kidney stones, treatment can be medications or dietary adjustments with the goal of decreasing the rate of

2

formation.  (*Id.*)  At times, kidney stone pain can be quite severe.  (Pl.'s Mem. in Opp'n at 2.)

Inmates obtain medical attention at NNRJ by filling out Inmate Request forms, detailing the nature of the medical complaint, and submitting it to the medical department.  (Def.'s Mem. in Supp. at 3.)  Inmates suffering from medical emergencies are directed to contact a member of the staff immediately.  (*Id.*)  Defendant prescribes the inmates medications, and the NNRJ medical staff administers them.  (Ex. 5, Inmate Medical Handbook at 2, ECF No. 26-5.)  There is no prohibition against treating inmates at NNRJ with opioid pain medications and no limitation on Defendant's ability or decision making with regard to the prescription of medications.  (Ex. 2, Dudley Dep. at 20, ECF No. 26-2.)

<u>Trusty Work Program</u>

NNRJ has instituted a "Trusty Work Program" to provide inmates with a positive outlet for their energy and to supplement the jail's needs through voluntary inmate labor. (Ex. 7, Trusty Work Program Policy, ECF No. 26-7.)  The Classification Officer must recommend inmates who volunteer for the Trusty Work Program, and the Medical Department must also endorse the recommendation.  (*Id.* at 3–4.)  Additionally, three security personnel, who have knowledge of the inmate's conduct, must endorse the recommendation.  (*Id.*)  The Trusty Work Program's selection criteria includes: the severity of the inmate's charges, the behavior of the inmate, staff recommendations, the length of sentence, the amount of bond and probability of bonding, the physical fitness of the inmate for an assignment, the suitability of the inmate to the particular job, the

inmate's escape history, and any other pertinent information relating to security, safety, custody, and control. (*Id.*)

Plaintiff began working as a Trusty participant in the jail's kitchens after his March 6, 2019 Recommendation for the Trusty Work Program was approved. (Def.'s Mem. in Supp. at 4.) On March 12, 2019, the Medical Department endorsed his physical fitness for the position. (Ex. 1, Jail Records at 3–4, ECF No. 26-1.) The Medical Department endorsed all of Plaintiff's subsequent requests for Trusty positions, finding him physically fit for the assignments. (*Id.* at 3–10.) During his incarceration, Plaintiff continued to volunteer to work as Trusty in various capacities, including unloading the food/bread truck, stacking trays, working as a food server, and painter. (Ex. 8, Inmate Request Forms, ECF No. 26-8.)

Plaintiff was involved in a fight with another inmate on August 11, 2020. (Def.'s Mem. in Supp. at 4.) Plaintiff was found guilty of "delay, hinder, or interfere with employee in performance of duty" and "fighting with any person" at a disciplinary hearing. (*Id.*) As a result, Plaintiff lost his job as Trusty, and jail personnel denied Plaintiff's subsequent requests for Trusty positions. (Ex. 9, Incident Report and Discipline at 1–4, ECF No. 26-9.)

<u>Dr. Dudley's Treatment Plan</u>

Defendant claims that there are several factors he weighs when he evaluates a patient for acute or chronic pain. (Def.'s Mem. in Supp. at 5.) To determine appropriate treatment, he considers: the individual's past history, the individual's current presentation, the combination of lab, ultrasound, CT scans, and plain film studies, the

4

individual's past history with respect to potential substance use disorder, the potential for diversion, and the individual's safety. (Dudley Dep. at 13.) A patient presenting with kidney stone pain is initially treated with an evaluation and examination. (*Id.*) Additionally, patients can be treated with lab or radiographic studies, sometimes ultrasonographic studies, the administration of various medications, and/or intravenous fluids. (Dudley Dep. at 12.)

Plaintiff has suffered from kidney stones since he was 21 years old. (Ex. 11, Gross Dep. at 9, ECF No. 26-11.) While incarcerated at NNRJ in March 2019, Defendant again developed issues with kidney stones. (Def.'s Mem. in Supp. at 5.) Defendant treated Plaintiff throughout his incarceration. (*Id.*) Some of Plaintiff's kidney stones were large stones and stayed in his renal pelvis, but other smaller stones passed from his kidney, down his ureter, and into his bladder. (*Id.*)

Defendant requested to see Plaintiff in the jail's medical department in response to his complaints of kidney stone pain. (*Id.*) Defendant saw Plaintiff on numerous occasions and obtained his past medical records from the MCV Urology Department to see what treatment Plaintiff received prior to his incarceration. (*Id.*) Defendant ordered various tests and studies including urinalysis, X-rays, and CT-scans. (*Id.*) Defendant also referred Plaintiff to an outside urologist, encouraged him to drink water with lemon juice, prescribed him a low oxalate diet, and continuously provided him with medications in response to his complaints. (Dudley Dep. at 75–77.) Defendant consulted with Plaintiff's urologist at Riverside Urology regarding the continued treatment for Plaintiff's kidney stones. (*Id.*)

Defendant prescribed pain medications at various dosages and combinations to Plaintiff, including Acetaminophen, Ibuprofen, and Tamsulosin/Flomax. (Dudley Dep. at 77.)  When Plaintiff recurrently complained of kidney stone pain, Defendant changed his medication regimen to attempt to give him pain relief.  (Gross Dep. at 19.)  Defendant also prescribed adjunct medications to help with Plaintiff's complaints of chronic pain, including Amitriptyline, Trazadone, Nortriptyline, and Meloxicam.  (Def.'s Mem. in Supp. at 6.)  These adjunct medications were provided to supplement and increase the effectiveness of the non-narcotic pain medications.  (*Id.*)  Defendant prescribed Flexeril, which is a muscle relaxant used to treat pain and stiffness caused by muscle spasms.  (*Id.* at 7.)  Although decreased urine output is a potential consequence of kidney stones due to urinary obstruction, Defendant never saw objective evidence of urinary obstruction or decreased urine flow in Plaintiff.  (*Id.*)  To determine whether Plaintiff suffered from decreased urine output, Defendant conducted CT scans and checked Plaintiff's blood work to assess renal function.  (Dudley Dep. at 55–56; Ex. 13, Medical Records, ECF No. 26-13.)  He did so because a complete or partial obstruction of urine flow affects kidney function.  (*Id.*)  Defendant claims Plaintiff's complaints of painful urination were not supported by his urinalysis results, which can corroborate an infection.  (Def.'s Mem. in Supp. at 7.)  However, Defendant still treated Plaintiff with medication for a possible infection.  (*Id.*)

## Plaintiff's Request for Opioids

Despite the varied and developing treatment plan Defendant put in place, Plaintiff sought opioids as a specific treatment option.  (Pl.'s Mem. in Opp'n at 9.)  The record

shows that Plaintiff was prescribed and treated with opioid medications on several occasions prior to his incarceration. (*Id.* at 10.) However, Defendant did not prescribe Plaintiff opioids while he treated him for symptoms related to his chronic kidney stones. (Def.'s Mem. in Supp. at 11.)

Defendant asserts that he did not believe using opioid painkillers as a treatment option was in Plaintiff's best interest for a variety of reasons. (*Id.*) Defendant "took into account [Plaintiff's] history of substance abuse, his reports of how opioids affected him, [Plaintiff's] function status without opioids, his review of [Plaintiff's] medical records from VCU, and his knowledge of the effectiveness of opioids to treat chronic pain." (*Id.*) Additionally, despite Plaintiff's request for opioid pain medication, the urologist at Riverside Urology did not prescribe Plaintiff opioids. (*Id.* at 12.) Plaintiff's medical records state that the urologist "explained in detail that opiates and narcotics are not given [on] a daily basis for pain management" of kidney stones. (Medical Records at 20.) He also recommended "Tylenol prn for breakthrough pain" and to "continue Flomax and hydration" in the meantime. (*Id.*)

Plaintiff and their experts assert that opioid pain medication was the only treatment option that controlled Plaintiff's chronic kidney stone pain. (Pl.'s Mem. in Opp'n at 14.) Plaintiff argues that "without consulting a single doctor who had previously provided [opioids]," Defendant denied him the only class of treatment that worked. (*Id.*) Plaintiff claims that Defendant did not prescribe opioids because he stated he "couldn't" prescribe them pursuant to an alleged policy. (*Id.* at 10.) After Plaintiff continued to seek opioids, Defendant allegedly threatened to remove Plaintiff's Trusty

*Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The first component requires an objectively serious medical need that has been diagnosed by a physician as requiring treatment or "one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The second subjective component requires a showing "that the defendant acted with deliberate indifference" to that medical need. *Heyer v. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Lightsey*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Under this standard, "'mere disagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). A medical provider's actions must "be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam); *see also Lightsey*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."). Questions of medical judgment are not subject to judicial review. *Neville v. Ballad Health Sys., Inc.*, 2022 WL 2681286, at *7 (W.D. Va. July 12, 2022) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)).

9

work status through the NNRJ work program. (*Id.* at 14.) Plaintiff was not provided with opioid medication at any time by any medical provider while incarcerated at NNRJ. (Def.'s Mem. in Supp. at 13.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Thus, the court must view the record in the light most favorable to the nonmoving party and must draw all reasonable inferences in his favor. *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 714 (4th Cir. 2013). However, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson Everett, Inc. v. Nat'l Cable Advert., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995).

To establish an Eighth Amendment claim of deliberate indifference, a plaintiff must allege facts sufficient to show that prison officials were deliberately indifferent to a plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). There are two components to proving a defendant's deliberate indifference. *Jackson v.*

8

### III.   ANALYSIS

The parties do not dispute that Plaintiff's kidney stones are an objectively serious medical need, however, the parties dispute whether Defendant was deliberately indifferent to that medical need.  The Court finds the record demonstrates that Defendant was responsive to Plaintiff's needs and provided individualized care based on his professional medical judgment.  As such, no reasonable jury could find Defendant was deliberately indifferent to Plaintiff's medical needs.

Plaintiff mainly relies on three cases to support his claim.  *Montanez v. Feinerman*, 439 F. App'x 545 (7th Cir. 2011); *Lyons v. Heyd*, No. 1:12-cv-324–MRB, 2015 WL 892375, at *7 (S.D. Ohio Mar. 3, 2015); *Wimbush v. Matera*, No. JKB-11-1916–JKB, 2012 WL 2579177, at *1 (D. Md. July 2, 2012).  However, these cases are distinguishable from the instant matter.  In *Montanez*, the court did not refuse to dismiss an inmate's claim because his prescription pain reliever was discontinued, as Plaintiff suggests.  Rather, the court refused to dismiss the inmate's claim because the inmate alleged that prison medical professionals knew he complained of kidney stones for several months but, despite knowing, provided *no* treatment until he passed two stones and blood was found in his urine.  *Montanez*, 439 F. App'x at 547.  This is not the scenario present in the case here.  Defendant clearly did not ignore Plaintiff's complaints of kidney stones and pain.  He provided treatment and medications each time Plaintiff complained of any pain or complications.

*Lyons* can also be distinguished.  There, the plaintiff alleged that the defendant medical providers were aware of his chronic and severe pain from sickle cell anemia,

10

however, defendants "deliberately refused to provide narcotic treatment because of the policy or custom of not providing inmates narcotics[.]" *Lyons*, 2015 WL 892375, at *6. This led the court to reason that it was plausible the defendant had not made "a reasoned, individualized medical decision" because they were aware of plaintiff's excruciating pain but did not provide him with narcotics simply by reason of the policy. *Id.* The case here is different because Defendant did not deny Plaintiff opioids due to a formulary, policy, or practice of not prescribing opioids. That is because there was no formulary, policy, or practice in place that limited Defendant's ability to prescribe opioids. Defendant was able to prescribe narcotics and, in fact, previously prescribed opioids to other inmates. (Dudley Dep. at 84–85.) Thus, there is nothing in the record to suggest Defendant did not make a reasoned, individualized medical decision regarding Plaintiff's treatment simply based on policy.

In *Wimbush*, the medical professionals withheld medications that had previously controlled the inmate's chronic pain because they were worried about addiction and the drugs were "non-formulary." 2012 WL 2579177, at *1. Importantly, "other forms of pain management had not been explored," and the medical professionals "base[d] their denial of certain medications on 'policy.'" *Id.* Moreover, the record in that case did not show "whether provisions exist[ed] for medical care providers to override the denial of necessary drugs to ensure adequate patient care." *Id.* Here, those same factors do not exist. Defendant considered and ultimately used other forms of pain management and treatment. Again, Defendant was not operating under a "formulary" or "policy" that prevented Defendant from prescribing opioid pain medication.

11

Lastly, the Court finds *Chamerblain* provides guidance on the issue.  *Chamerblain v. Mathena*, No. 7:19-cv-879–EKD, 2022 WL 963960, at *8 (W.D. Va. Mar. 30, 2022).  There, the medical professional offered the plaintiff alternative, non-opioid medications to treat his chronic pain and discontinued his current prescriptions for opioids.  *Id.*  This was done despite the inmate reporting that other physicians had prescribed him the opioid medications and that he experienced negative side-effects in the past from the same non-opioid medications the physician wanted to prescribe.  *Id.*  The court held that a disagreement between reasonable medical professionals is not sufficient to state a deliberate indifference claim.  *Id.*[1]  Here, although Plaintiff can point to being prescribed opioids for his kidney stones prior to incarceration, the fact that Defendant disagreed with his previous physicians and did not prescribe opioids is not sufficient to state a claim of deliberate indifference.

Plaintiff was continually screened and evaluated in the medical department for his kidney stones and complaints of pain.  Defendant provided various medication regimens for Plaintiff that not only provided several different pain medications utilized at increasing dosages, but also pain medications used in conjunction with other medications to increase the effectiveness of the pain medication.  (Dudley Dep. at 77–81.)  Defendant

---

[1] *See also Drakeford v. Mullins*, 678 F. App'x 185, 186 (4th Cir. 2017) ("To the extent Drakeford complains that additional, stronger, or more frequent pain medication was required, this, without more, is insufficient to prevail on a deliberate indifference claim."); *Branham v. Meyer*, No. 4:19-cv-279, 2019 WL 5884301, at *4 (D.S.C. Nov. 12, 2019), aff'd, 813 F. App'x 114 (4th Cir. 2020) ("Refusing Branham access to Ultram, the prescription of his choice, does not rise to the level of deliberate indifference . . . ."); *Mohammed v. Daniels*, No. 5:13-cv-03077, 2016 WL 4544017, at *12 (E.D.N.C. Aug. 31, 2016), aff'd, 673 F. App'x 347 (4th Cir. 2017) ("Plaintiff's disagreement with Owens' decision with respect to plaintiff's pain management does not rise to a level of deliberate indifference.").

continually monitored Plaintiff and worked to find objective sources for his pain. Defendant conducted physical examinations, but Plaintiff's presentation was inconsistent with acute and chronic pain. (*Id.* at 67–68.) Defendant ordered numerous urinalyses, blood work, and CT scans to assess Plaintiff's renal function and determine if his complaints of pain were the result of complete or partial obstructions due to kidney stones. (*Id.* at 54–55.) Defendant encouraged Plaintiff to drink fluids, prescribed Vitamin C, lemon juice, and special diets to reduce the likelihood of Plaintiff developing kidney stones.

Furthermore, Plaintiff was referred to a urology specialist, and Defendant consulted with them regarding the appropriate treatments for Plaintiff. (*Id.* at 21, 75.) Plaintiff's urologist also did not prescribe opioid medication for treatment of Plaintiff's kidney stones. (*Id.* at 75.) It is undeniable that Plaintiff's chronic kidney stone issues constitute an objectively serious medical need, however, Plaintiff has not established that Defendant was deliberately indifferent to that need. Plaintiff may dispute whether the non-narcotic treatment Defendant provided was the optimum treatment option, but an inmate not receiving the optimal level of treatment or the treatment they prefer cannot be the basis for a deliberate indifference claim. Reasonable medical providers can, and often times do, have differing opinions on what treatment options are best. Based on the record, there is no evidence to show that Defendant did not make a reasonable, individualized decision using his professional medical judgment in establishing Plaintiff's treatment plan. Accordingly, Defendant did not act in a manner that was in violation of the Constitution.

## IV.   QUALIFIED IMMUNITY

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  The qualified immunity inquiry involves two steps: (i) whether the plaintiff's allegations state a claim that defendant's conduct violated a constitutional or statutory right; and if so, (ii) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  If the Court determines that the facts alleged, taken in the light most favorable to the plaintiff, do not show that the officer's conduct violated a constitutional right, the defendant is entitled to summary judgment without further discussion of qualified immunity. *Id.* at 201.  Judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court finds that the facts as alleged, taken in the light most favorable to Plaintiff, do not establish that Defendant violated the Constitution through his medical care or treatment plan for Plaintiff.  Because the Court finds that Defendant did not violate the Constitution, consideration of whether there was a constitutional right clearly established is unnecessary. *Callahan*, 555 U.S. at 236.  Thus, the Court finds that Defendant is entitled to summary judgment.

14

## V.   CONCLUSION

Defendant showed there is no dispute as to material fact regarding Plaintiff's treatment for kidney stones and that no reasonable jury could find Defendant was deliberately indifferent.  Although Plaintiff's condition is undoubtedly an objectively serious medical need, there is nothing in the record demonstrating that Defendant was deliberately indifferent to Plaintiff's medical needs.  Thus, Defendant's Motion for Summary Judgment (ECF No. 25) will be granted.

An appropriate Order shall accompany this Memorandum Opinion.

_____ /s/

Henry E. Hudson
Senior United States District Judge

Date: **Nov 14, 2022**
Richmond, Virginia